(79 South. 330)

No. 22575.

SIMON v. MEAUX.

(May 27, 1918. Rehearing Denied June 29, 1918.)

*(Syllabus by the Court.)*

DIVORCE ☞25 — HUSBAND AND WIFE ☞ 267(1)—ACTION FOR SEPARATION—CONDONATION—COMMUNITY PROPERTY.

Where the general conduct of a husband and particular acts which might have afforded the wife a cause of action for separation from bed and board have been condoned, and the parties have continued to live together, though unhappily, the mere fact that the husband makes a sale of community property and intimates an intention to sell more will not, of itself, nor with the conduct and acts theretofore condoned, constitute a sufficient cause upon which to base such action, and particularly where the litigants have lived together as husband and wife for over 50 years; since, as head and master of the community, it is the privilege of the husband to sell its property, in good faith, without the permission or approval of the wife.

Appeal from Seventeenth Judicial District Court, Parish of Vermilion; W. W. Bailey, Judge.

Suit by Marie Melize Simon, wife, against A. D. Meaux, for separation from bed and board and a partition of community property. Judgment for plaintiff, and defendant appeals. Judgment annulled, and judgment for defendant dissolving the injunction issued and rejecting plaintiff's demands.

Broussard & Samson and J. R. Kitchell, all of Abbeville, for appellant. W. B. Gordy and Preston J. Greene, both of Abbeville, for appellee.

## Statement of the Case.

MONROE, C. J. After living together for 51 years, until the defendant had passed the seventy-fifth anniversary of his birth, becoming the parents of 12 children, of whom 8 survive and 7 are married and (some) have grown children of their own, plaintiff brings this suit against her husband for separation from bed and board and a partition of the property of the community. Thirty-seven witnesses, including all the children and "in-laws," and several of the grandchildren, of the marriage, were called on behalf of plaintiff, and a bare half dozen, mainly outsiders, on behalf of defendant. Plaintiff, herself, and the witnesses who profess to know most about the matters considered relevant to the issue presented, begin their testimony by telling what they know of an incident which occurred 18 years before, and by far the greater proportion of the testimony adduced relates to incidents and conditions occurring and existing from that time down to within 2 or 3 years of the institution of the suit. When the litigants were married (in 1864, as we take it), they were poor—having not more than $500 between them. The property of the community, inventoried and appraised for the purposes of this suit, is valued at $49,949, and, we apprehend, is worth considerably more than that; there being included two sections of land which appear to be under cultivation or used for stock raising, and the indications being that there is other land not included in the inventory, since defendant testifies that he still owns 1,600 acres. The sons, with the exception of Remus, the youngest, aged 28, appear also to have acquired property; Delmas, the eldest, aged 48, who is unmarried, being the owner of over half a section of land, which he cultivates as a farm. After testifying to that effect, and that he left his father's and went to his own place at the age of 23, and later, returned to his father's, he was, at once, asked whether he recalled the time when it was claimed that his mother had been struck by his father, to which it was objected that the incident was too remote, had been condoned, and was not admissible under the allegations of the petition, which objections having been overruled, and it having been agreed that the same objection and ruling should apply to all such testimony, the witness answered, "Yes, that has been, more or less, about 18 years ago." And, so, with many of the other witnesses. It is beyond dispute, however, that, for 8 years after the incident in question, plaintiff and defendant lived together as husband and wife, and that, during the remaining 10 years of the period of 18 years, plaintiff had practically severed the marital relations, occupied a separate room in the house from that occupied by her husband, and held no other than unavoidable and the coldest intercourse with him, he going his way, and she hers, until on October 16, 1916, defendant sold 160 acres of low lying land, which was followed, on the 21st of the same month, by the institution of this suit, concerning which, plaintiff, while testifying, was asked the question and made answer as follows:

"Q. Is it not a fact that the old gentleman selling this property alarmed you, and that is the real reason you filed this suit; that is the thing that worried you? A. That, and a great many other things. For a long time I have seen the thing coming. He had already warned me in advance that it was his intention to sell everything, but I didn't believe this would happen. I brought this suit for that reason and many other reasons."

Testifying in regard to the incident to which we have referred, she states that defendant, at that time, made her a great many promises, and among them that (translated from the French, in which the testimony was given):

"If you will want, I promise you, when Remus, our youngest child, has arrived at the age of majority (he was then 10 years old), I will convey to you one-half of the property that we possess; I will put it in your name."

Remus, as we have stated, had attained the age of 28 years when this case was tried; he was married, had children, and had acquired no property; and in giving his testimony he seemed to be unable to recall any redeeming, or approximately redeeming, trait that his father may have possessed, but remembered quite distinctly the particulars and language used in connection with the "incident" upon the occasion of which, at the age of 10, he and his parents were the only persons present. He also remembers, or testifies to, statements made to him by his father, concerning his mother, which appear to us incredible.

### Opinion.

It will readily be understood that, for a husband and wife beginning life in the country, with practically no means, and, as we infer, but slight educational advantages, to accumulate $50,000, as earnings mainly from the soil, whilst, at the same time, rearing to vigorous maturity 8 out of 12 children, who appear, with the possible exception of the youngest, to have early developed a capacity to take care of themselves, an intelligence superior to that of most people similarly situated, untiring industry, and stern self-denial, must have been required, and we have no doubt, judging from the results, and from the testimony that they have given, that both the litigants now before the court possessed and regulated their conduct in accordance with those attributes during the greater part of the more than 50 years of their married life. Unfortunately, however, it sometimes happens that hardness of life develops hardness of character in which the graces and amenities struggle for existence and die, even as flowers may struggle and die between paving stones; and so it has been in this instance. About the only thing that plaintiff and defendant seem to have considered not worth saving was their affection for each other, though upon that depended the one great thing without which all others were valueless—their happiness. From our reading of the testimony, we conclude that the defendant has been most to blame. The incident of 18 (now 20 or more) years ago, as narrated by plaintiff, was infinitely to his discredit, and, though his account of it is more favorable to himself, we are inclined to think that hers is the better supported by the evidence. We think, however, that, grievous as the wrong may have been, it was long since condoned by plaintiff and should not have been resurrected as a cause of action in this case; and other instances, of the use of bad language by defendant towards plaintiff, said to have occurred subsequently, but at periods of from 2 to 7, 8, or 10 years prior to the institution of this suit, were equally inadmissible; and so, too, was the testimony to the effect that, during the past 20 years, defendant has gambled in a small way, and has been drinking in a larger way. Neither the one nor the other of those vices had grown any worse within the year or two preceding this suit than they were 20 years before, and neither of them appears to us to have constituted the real reason for the bringing of the suit; nor did the coarse food with which, it is said, the family was provided, constitute that reason. It is not shown that it had ever been better. As the parties have not been on easy speaking terms for the past 10 years, their home does not appear to have been agreeable to them, and they have absented themselves a good deal, leaving the housekeeping to two young grandchildren, who have, no doubt, done as well as they could, but who would not assume to do many things which might have been done by the mistress of the house. In her original petition, plaintiff alleges that:

"During the last six or seven years, her said husband has struck her on various occasions; in particular, he threw a glass at her which struck her on the head," etc.

It was admitted on the trial that defendant has not struck plaintiff within the last six or seven years, or at any time, save upon the occasion of the incident 18 years ago, and defendant denies that he then struck her. It is alleged that:

"Defendant has already squandered and sold for nothing some of the real property which belongs to the community, and is about to sell more of the property which has been accumulated by mutual efforts of petitioner and her said husband."

It was shown on the trial that he sold 160 acres of low lying land, which had Cherokee roses growing on it and a coulee running through it, from the waters of which latter it was subject to inundation, and that he received $3,800 for it, of which he used $2,160 in paying off a mortgage, $600 in paying a note held by the bank, about $100 in paying blacksmith and store accounts, and the balance was still in his possession. Another of plaintiff's allegations is:

"That, on account of the ill treatment of her said husband as aforesaid, and on account of his attempting to dispose of the property belonging to the community of acquêts and gains which existed between her and her said husband, she is not only entitled to a separation from bed and board, but a settlement of the community aforesaid."

And she prays for an inventory, an injunction restraining defendant from further disposing of the community property, and final judgment, etc.

We are satisfied that the litigants are not living happily together, and have not been doing so for a long time; but their relations are such that they have very little to do with each other, and, if they meet, the language used by the plaintiff, who is a high-spirited woman, is about as unparliamentary as that used by defendant, who also has a temper of his own. That condition has endured for some years, and has not been, and would not now be, set up as a ground for separation from bed and board, were it not that defendant has made the sale of his land. But,

though some relief might be afforded plaintiff were it shown that defendant is deliberately spoliating the community for the purpose of impoverishing her, we know of no law which entitles a wife to a separation from bed and board merely because the husband has made a sale of community property and has intimated an intention to sell more, since, as head and master of the community, it is his privilege to sell its property, in good faith, without the wife's permission or approval.

It is therefore ordered that the judgment appealed from be annulled, and that there now be judgment for defendant, dissolving the injunction herein issued and rejecting the demands of the plaintiff at her cost in both courts.